UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MAKIDA JOHN-BAPTISTE,

                Plaintiff,

v.

HSBC BANK USA, N.A.,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-3164 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Plaintiff Makida John-Baptiste ("Plaintiff") brings this action against Defendant HSBC Bank USA, N.A. ("HSBC") alleging discrimination based on gender and pregnancy in violation of the New York State Human Rights Law, N.Y. Exec. Law § 290, *et. seq.* ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et. seq.* ("NYCHRL"). Notice of Removal, Ex. A ("Complaint"), ECF No. 1-1. Before the Court is HSBC's motion for summary judgment. Def.'s Mot. for Summ. J. ("Def. Mem."), ECF No. 40-3. For the reasons set forth below, the Court GRANTS HSBC's motion.

## I. BACKGROUND

### A. Statement of Facts

The following facts, drawn from the parties' Local Rule 56.1 Statements and the record of admissible evidence, are undisputed. Fed. R. Civ. P. 56(c); E.D.N.Y. Local Rule 56.1. Facts supported by the record and not contradicted by admissible evidence are admitted. *Sanchez v. N.Y.C. Transit Auth.*, 17-CV-5818, 2020 WL 5763860, at *1 n.1 (E.D.N.Y. Sept. 28, 2020) (DeArcy Hall, J.) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)).

Defendant HSBC is an international bank with several retail branches in New York. Sealed Pl.'s Resp. to Def.'s Rule 56.1 Statement ("Pl. Rule 56.1 Stmt.") ¶ 1, ECF No. 42-25.[1] In 2012, HSBC appointed Plaintiff Makida John-Baptiste to Branch Relationship Banker ("BRB") at a retail branch in Brooklyn, New York. *Id.* ¶ 15. In 2015, HSBC promoted Plaintiff to Premier Relationship Manager ("PRM") at a retail branch in Manhattan, New York. *Id.* ¶ 17.

BRBs and PRMs sell banking products and services to HSBC's retail customers by "acquiring new HSBC clients and upgrading existing clients." *Id.* ¶ 17. "Upgrading" means moving an existing client account to a higher tier: for example, from an "Advance" to a "Premier" account. *Id.* ¶ 6. Once upgraded, clients must maintain a minimum account balance or meet certain other criteria to avoid incurring a monthly service charge. *Id.* ¶ 8. The minimum account balance for a Premium account is $100,000.00. *Id.* BRBs and PRMs must obtain clients' consent before upgrading their accounts. *Id.* ¶ 7. Clients can request "downgrades" to a lower tier without charge. *Id.* ¶ 9.

BRBs and PRMs were eligible to receive quarterly performance bonuses determined, in part, by whether they met quarterly sales targets for account upgrades. *Id.* ¶ 21. Bonuses were assessed at the end of each quarter and did not account for whether an upgraded account was subsequently downgraded the next quarter. *Id.* ¶ 22. Plaintiff earned multiple such quarterly bonuses during her employment with HSBC. *Id.* ¶ 23.

In November 2016, Plaintiff was put on a Performance Improvement Plan ("PIP") addressing her high rate of account upgrades and downgrades. *Id.* ¶¶ 62–63. The PIP stated:

> In Q1 [of 2016], ***all the upgrades performed by [Plaintiff] were 100% downgraded.*** To ensure the upgrades/onboards to our Premier proposition are done in an ethical

---

[1] Plaintiff's Response to Defendant's Sealed Rule 56.1 Statement ("Def. Rule 56.1 Stmt."), ECF No. 40-5, combines Paragraphs Ten and Eleven of Defendant's Statement. As a result, there is a one-paragraph misalignment between the parties' respective Rule 56.1 Statements.

2

and professional manner[,] [c]lients have to be aware of the Premier requirements and we need to make sure that Premier is the right fit based on their banking needs.

Preston Decl., Ex. H ("PIP"), ECF No. 40-113 (emphasis added).[2]

*Project Woodchip*

In the fall of 2016, HSBC launched an internal investigation into unethical sales practices dubbed "Project Woodchip." Pl. Rule 56.1 Stmt. ¶¶ 24–26. Members of Project Woodchip included Anthony Glover, Executive Vice President and Head of U.S. Retail Banking; Paula Zagora, Senior Vice President and Head of Employee Relations; Peter Hutter, Vice President of Employee Relations; and Lisa McEldowney, Vice President and Human Resources Business Partner for HSBC's branch network. *Id.* ¶¶ 2, 29. Attorneys from HSBC's Global Internal Investigations Group and outside legal counsel conducted the underlying investigative work. Def. Interrog. Resp. ("Def. Interrog. Resp.") No. 4, ECF No. 40-15; Pl. Rule 56.1 Stmt. ¶ 29. The investigation "included the review of electronic searches applied on a companywide basis" and "covered thousands of [HSBC] employees nationwide." Def. Interrog. Resp. Nos. 5, 8.

Twenty-five HSBC employees were ultimately disciplined in connection with Project Woodchip, including Plaintiff and three of her former branch managers. Def. Interrog. Resp., Ex. A; Pl. Rule 56.1 Stmt. ¶ 47. Fourteen of these twenty-five employees were male; eleven were female. Pl. Rule 56.1 Stmt. ¶¶ 44–45. There is no evidence anyone in this group besides Plaintiff was pregnant. *Id.* ¶ 45. Seven employees, including Plaintiff, were terminated. Pl. Rule 56.1 Stmt. ¶ 44. Four of the terminated employees were male; three were female. *Id.*

---

[2] Shortly after receiving her PIP, Plaintiff filed an internal complaint against her supervisor for creating a hostile work environment. *See* Def. Rule 56.1 Stmt. ¶ 91; Pl. Rule 56.1 Stmt. ¶ 90. The complaint did not allege discrimination; it asserted the branch lacked a "positive working environment . . . because of the ongoing spirit of division." *Id.*

*Plaintiff's Termination*

Anthony Glover made the decision to terminate Plaintiff. Def. Interrog. Resp. No. 1; *see also* Anthony Glover Dep. Tr. ("Glover Tr.") at 80:6–11, ECF No. 40-7 (testifying "ultimately I said yes or no" about whether HSBC would terminate Plaintiff); Peter Hutter Dep. Tr. at 106:11–20, ECF No. 40-13 (testifying Glover "was responsible for making the ultimate decision to terminate" Plaintiff); Lisa McEldowney Dep. Tr. at 59:17–21, ECF No. 40-11 (testifying Glover "was the final decision maker in terms of what disciplinary actions would occur" with respect to Plaintiff). Plaintiff's termination was recommended by members of Project Woodchip and supported by HSBC's legal team. Def. Interrog. Resp. No. 2; Glover Tr. at 80:6–11. Glover was unaware of Plaintiff's pregnancy. Pl. Rule 56.1 Stmt. ¶ 46.

On February 12, 2018, Peter Hutter and another HSBC employee, Anthony Mancusi, met with Plaintiff to inform her of her termination. *Id.* ¶ 77. Hutter and Mancusi provided Plaintiff with a Corrective Action Termination Form ("CATF") and walked her through the reasons for her termination. *Id.* The CATF explains the reasons for Plaintiff's termination as follows:

> During a recent investigation into unauthorized sales practices, it was brought to management's attention that during the period covering 2014, 2015, and 2016, [Plaintiff] was found to be acting with a lack of integrity and outside of the company's policies and objectives in respect to her sales and earning sales credit. These activities included:
>
> - During sametime[3] chats with co-workers during 2014 and 2015, [Plaintiff] made several mentions of unauthorized account upgrades, either ones she did herself or those done by others. Quotes for [Plaintiff] during one [of] these [] chats on May 9, 2014 included "cuz the bank be crooking people" and "smh we're the culprits too cuz we have upgrade goals [smiley face emoji]."
>
> - On one of these chats, [Plaintiff] sent her manager an account and asks what he thinks of the customer's balance trend and if she should upgrade the account. He then responded, "upgrade . . . good find." [Plaintiff] then replied, "there goes ur 670 upgrade!"

---

[3] "Sametime" is HSBC's internal instant messaging system. Pl. Rule 56.1 Stmt. ¶ 32.

4

- In March of 2014, [Plaintiff] sent a co-worker an account number, saying "here's an upgrade for you." When the co-worker replied, "nah that's my homie, she will go crazy if she gets charged," [Plaintiff] replied, "smh, still complaining . . . BYE!"

- Although [Plaintiff's] comments indicated she was clearly aware of possible unauthorized sales practices on the part of others, she did not report these to anyone.

- The investigation identified incidents of accounts upgraded by [Plaintiff] without client consent and/or were not warranted. It was noted by employees who worked with [Plaintiff] that she did such upgrades.

- In 2014, [Plaintiff] closed or downgraded 43% of her [A]dvance accounts, and 66% of [A]dvance accounts were charged fees. In 2015, 44% her [A]dvance accounts were charged fees. All of this was well above the national average during the same time period.

[Plaintiff's] actions and results indicate she was willing to provide upgrades which were either unwarranted and/or without the client's consent to help maintain her sales credit. She also did not report behavior which she clearly understood to be unethical. Based on her actions, [Plaintiff's] employment is being terminated as of this day.

Preston Decl., Ex. I ("CATF") at 2, ECF No. 40-113.

The CATF states Plaintiff violated HSBC's policies despite certifying her compliance with HSBC's "Statement of Business Principles and Code of Ethics" "every year as part of her Certificate of Compliance training." *Id.* at 1. The Code warns employees "violations of this [] or other company policies, or failure to report known concerns, . . . can subject the employee to disciplinary procedures, *which may include termination*." *Id.* (emphasis added).

### B. Procedural History

On April 12, 2019, Plaintiff filed a Complaint against HSBC in the Supreme Court of New York State, Kings County, alleging unlawful gender- and pregnancy-based discrimination in

5

violation of the NYSHRL and NYCHRL. *See generally* Complaint.[4] Defendants removed Plaintiff's case to this Court on May 31, 2019. Notice of Removal, ECF No. 1. Before the Court is HSBC's fully briefed motion for summary judgment. Def. Mem. at 25.

## II. LEGAL STANDARD

Summary judgment is appropriate when a movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Avail 1 LLC v. Varlas*, 680 F. Supp. 3d 265, 271 (E.D.N.Y. 2023) (Matsumoto, J.) (quoting *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011)). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal citation omitted). The Court's "function is not to [] weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S.

---

[4] Although the Complaint includes discrimination claims based on race and a hostile work environment, Plaintiff fails to contest HSBC's reasons for dismissing these claims in her opposition to summary judgment. *See generally* Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl. Mem."), ECF No. 40-105; *see also* Def.'s Reply in Supp. of Mot. for Summ. J. ("Def. Reply") at 2, ECF No. 40-115 ("Plaintiff's opposition does not respond to HSBC's evidence or arguments [as to her race and hostile-work-environment claims]."). Plaintiff therefore abandoned these claims. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."); *see also Esperanza v. City of New York*, 325 F. Supp. 3d 288, 298 (E.D.N.Y. 2018) (Kuntz, J.) ("Plaintiffs' opposition begins with an explicit list of the causes of action for which they oppose summary judgment. Plaintiffs, by failing to offer any opposition to the claims other than the ones expressly listed, thereby abandon the remainder of their claims.").

at 249. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The party moving for summary judgment carries the burden of demonstrating the absence of any disputed issues of material fact and entitlement to judgment as a matter of law. *Avail 1*, 680 F. Supp. 3d at 272. The movant must point to admissible record evidence, "including depositions, documents . . . [and] affidavits or declarations," Fed. R. Civ. P. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant has met his or her burden, the nonmoving party must "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Avail 1*, 680 F. Supp. 3d at 272 (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)). The non-movant cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

### III.   ANALYSIS

#### A. The *McDonnell Douglas* Burden-Shifting Framework Applies to this Case

"NYSHRL and NYCHRL claims are both analyzed using the three-step burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Uttarwar v. Lazard Asset Mgmt. LLC*, 24-1085-CV, 2025 WL 704278, at *2 (2d Cir. Mar. 5, 2025). Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden

of establishing a *prima facie* case of employment discrimination. *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 111 (S.D.N.Y. 2022) (Karas, J.). "To meet this burden, [P]laintiff must show that (1) [she] is a member of a protected class; (2) [she] was qualified to hold the position; (3) [she] was terminated from employment or suffered another adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination." *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 113 (1st Dep't 2012) (internal citation and quotation marks omitted). "The burden of production then shifts to [HSBC] to offer a legitimate, non-discriminatory reason for the allegedly discriminatory conduct." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 324 (S.D.N.Y. 2020) (Engelmayer, J.). "Upon such a showing, [Plaintiff] must demonstrate that the reasons offered by [HSBC] are a mere pretext for discrimination." *Id.*

The parties dispute whether Plaintiff has established a *prima facie* case. *Compare* Def. Mem. at 14–19 *with* Pl. Mem. at 12–16. "At this stage of the litigation, however, there is little to be gained in assessing whether [Plaintiff] can make out a *prima facie* case, as opposed to focusing on the third step of the *McDonnell Douglas* analysis." *Weaver v. Bloomberg L.P.*, 717 F. Supp. 3d 372, 384 (S.D.N.Y. 2024) (Engelmayer, J.); *see also Luo v. AIK Renovation Inc.*, 23-CV-5878, 2024 WL 4444283, at *7 (S.D.N.Y. Oct. 8, 2024) (Liman, J.) ("[O]n a motion for summary judgment '[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant.'") (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)); *Maynard* v. *Montefiore Med. Ctr.*, 18-CV-8877, 2021 WL 396700, at *10 (S.D.N.Y. Feb. 4, 2021) (Preska, J.) ("[A] court may simply assume that a plaintiff has established a *prima*

8

*facie* case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action.").

HSBC has provided a legitimate, nondiscriminatory reason for Plaintiff's termination: Plaintiff engaged in unethical sales practices in violation of HSBC's policies, as set forth in Plaintiff's CATF. *See supra* Part I.A; *see also Ibraheem v. Wackenhut Servs., Inc.*, 29 F. Supp. 3d 196, 211 (E.D.N.Y. 2014) (Chen, J.) ("Violations of workplace policies provide ample justification for terminating Plaintiff."). The Court proceeds directly to the third step of the *McDonnell Douglas* framework.

### B. Plaintiff Fails to Produce Sufficient Record Evidence of Gender/Pregnancy Discrimination[5]

Summary judgment is appropriate under the NYSHRL and NYCHRL where "no reasonable jury could conclude that discrimination played a role in the defendant['s] actions." *Owens v. Delta Airlines, Inc.*, 23-CV-02114, 2025 WL 278024, at *8 (E.D.N.Y. Jan. 23, 2025) (Block, J.) (internal alterations omitted) (quoting *Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 76 (2d Cir. 2015)); *see also Pang v. Ye*, 23-713-CV, 2024 WL 1298553, at *3 (2d Cir. Mar. 27, 2024) ("[W]hile [NYCHRL] claims are subject to a more forgiving standard than Title VII or NYSHRL claims . . . summary judgment is still appropriate if no reasonable jury could conclude that discrimination or retaliation played a role in the defendant's actions.") (internal citation and quotation marks omitted); *Romero v. St. Vincent's Servs., Inc.*, 19-CV-7282, 2022 WL 2079648, at *9 (E.D.N.Y. June 10, 2022) (Matsumoto, J.) (granting defendant's motion for summary judgment under the NYCHRL where plaintiff "has not presented evidence from which a reasonable jury could conclude that her pregnancy played a role in her termination"), *aff'd*, 22-

---

[5] Plaintiff does not differentiate her discrimination claims based on gender and pregnancy. *See* Def. Reply at 1 ("Plaintiff's gender discrimination claim [] is indistinct from her pregnancy discrimination claim."). As a result, the Court analyzes these claims together.

9

1476-CV, 2023 WL 3477161 (2d Cir. May 16, 2023). As discussed below, Plaintiff fails to adduce any evidence capable of persuading a reasonable jury her gender or pregnancy played a role in her termination.

### 1. *Threshold Legal Deficiencies*

Including Plaintiff, HSBC dismissed seven employees in Project Woodchip for violating its policies: four men and three women. There is no evidence any of these employees besides Plaintiff was pregnant. *See supra* Part I.A. HSBC therefore subjected six employees outside Plaintiff's protected class to the same disciplinary action for the same conduct as Plaintiff, significantly undermining her discrimination claim. *See, e.g., Camarda v. Selover*, 673 F. App'x 26, 29 (2d Cir. 2016) (affirming grant of defendants' motion for summary judgment on gender discrimination claims where "the record shows that defendants subjected male officers to some of the same disciplinary actions for some of the same actions for which [the female plaintiff] was cited."); *Terpstra v. Shoprite Supermarket, Inc.*, 17-CV-6840, 2019 WL 3338267, at *9 (S.D.N.Y. July 25, 2019) (Karas, J.) ("The fact that Bartley, who is male, was terminated along with Plaintiff significantly undermines any inference that her termination was motivated by gender discrimination.").

Moreover, Plaintiff concedes Anthony Glover—who made the decision to terminate her—did not know she was pregnant. Pl. Rule 56.1 Stmt. ¶ 46. "[A] defendant's discriminatory intent cannot be inferred . . . from circumstances unknown to the defendant." *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 87 (2d Cir. 2005); *see also Pace v. Fisher Price*, 03-CV-6474, 2005 WL 3360452, at *4 (E.D.N.Y. Dec. 9, 2005) (Glasser, J.) ("In the absence of evidence that defendant knew plaintiff was pregnant when it decided to terminate her employment, the circumstances of plaintiff's discharge do not permit an inference of discrimination."). Although

10

Plaintiff states in her Rule 56.1 Statement that Lisa McEldowney, a member of Project Woodchip, knew of her pregnancy, she does not claim McEldowney either passed the information to Glover or made the decision to terminate Plaintiff herself. "Plaintiff must 'do more than produce evidence that *someone* at the defendant knew plaintiff was pregnant. She [is] obliged to offer evidence indicating that persons who actually participated in her termination decision had such knowledge.'" *Lambert v. McCann Erickson*, 543 F. Supp. 2d 265 (S.D.N.Y. 2008) (Holwell, J.) (internal citation omitted); *see also Stainkamp v. Changes Int'l of Fort Walton Beach, Inc.*, 373 F. Supp. 2d 163, 167–68 (E.D.N.Y. 2005) (Feuerstein, J.) ("In order to survive summary judgment, [] Plaintiff must adduce some evidence . . . that the person who decided to terminate her . . . knew of her pregnancy").

### 2. *Failure to Show Discriminatory Motive*

Plaintiff claims HSBC acted with a discriminatory motive because it "did not have documented complaints from customers that Plaintiff had engaged in unauthorized account upgrades, proof that Plaintiff engaged in unauthorized accounts upgrades, nor proof that Plaintiff was aware of unethical activities that she failed to report." Pl. Mem. at 13. But whether HSBC had conclusive proof Plaintiff engaged in unethical conduct is irrelevant. "The question in any discrimination case is not whether the defendant's decision to fire the plaintiff was correct, but whether it was discriminatory." *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 145 (E.D.N.Y. 2015) (Bianco, J.); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer'; the factual validity of the underlying imputation against the employee is not at issue.") (emphasis in original) (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 716

11

(1983)). Plaintiff's argument addresses the correctness of HSBC's decision, not what motivated its decision. "Even under the NYCHRL, the mere fact that a plaintiff may disagree and think that her behavior was justified does not raise an inference of pretext." *Chen*, 805 F.3d at 76 (internal citation and quotation marks omitted); *see also Eka v. Brookdale Hosp. Med. Ctr.*, 247 F. Supp. 3d 250, 275 (E.D.N.Y. 2017) (Chen, J.) ("[A] plaintiff's factual disagreement with the validity of an employer's non-discriminatory reason for an adverse employment decision does not, by itself, create a triable issue of fact.") (internal citation and quotation marks omitted).[6]

Plaintiff argues HSBC's reason for termination was pretextual because "a similarly situated male employee . . . not in [Plaintiff's] protected class was not terminated for having engaged in unauthorized account upgrades." Pl. Mem. at 14 (citing Preston Decl., Ex. K, ECF No. 40-113). But Plaintiff mischaracterizes this male employee as similarly situated. "In the context of allegations of disparately administered discipline, a plaintiff is only similarly situated to individuals who were subject to the same workplace standards and engaged in conduct of comparable seriousness." *Russell v. Aid to Developmentally Disabled, Inc.*, 416 F. Supp. 3d 225, 233 (E.D.N.Y. 2017) (DeArcy Hall, J.), *aff'd*, 753 F. App'x 9 (2d Cir. 2018). The corrective action form issued to this male employee shows fewer unauthorized account upgrades compared

---

[6] Plaintiff notes she received "positive performance evaluations" prior to her termination. Pl. Mem. at 2. But "prior positive performance review[s] will not establish that a later unsatisfactory evaluation was a pretext for unlawful discrimination." *Brower v. Cont'l Airlines, Inc.*, 62 F. Supp. 2d 896, 906 (E.D.N.Y. 1999) (Glasser, J.). This is particularly apt where "the misconduct . . . is first uncovered years later during a nationwide investigation by persons other than Plaintiff's direct supervisors." Def. Reply at 9. Plaintiff further alleges HSBC changed her 2017 performance evaluation to "create the impression that [her] work performance was poor." *Id.* at 20. But HSBC never raised poor performance as a reason for Plaintiff's termination. *See generally* CATF. And financial institutions often "[c]hange employees' performance ratings to 'unsatisfactory' based on newly-discovered evidence of their misconduct . . . [to] ensure that such employees are ineligible for rehire." Def. Reply at 10 n.7.

to Plaintiff, whose accounts were closed, downgraded, or charged fees at a rate "well above the national average." *Compare* CATF *with* Preston Decl., Ex. K.

Plaintiff asserts HSBC's decision to issue this male employee a final written warning while terminating her is suspect because, unlike him, Plaintiff had "no prior Corrective Actions." Pl. Mem. at 15–16. But Plaintiff ignores the five employees outside her protected class who were also terminated in Project Woodchip despite *"not receiv[ing] any prior Corrective Actions."* Def. Mem. at 6 (emphasis in original). "Plaintiff cannot defeat a summary judgment motion by cherry-picking evidence to concoct some claim of disparity." *Grant v. Roche Diagnostics Corp.*, 09-CV-1540, 2011 WL 3040913, at *9 (E.D.N.Y. July 20, 2011) (Seybert, J.) (internal alterations omitted) (quoting *Ragusa v. Malverne Union Free Sch. Dist.*, 652 F. Supp. 2d 275, 282 (E.D.N.Y. 2009) (Hurly, J.)).

Lastly, Plaintiff argues HSBC "showed a pattern of [gender and pregnancy] discrimination" by "transferr[ing] the pregnant head banking teller [of Plaintiff's branch], involuntarily, . . . to a location further from her home" in the weeks before terminating Plaintiff. Pl. Mem. at 1. But Plaintiff adduces no evidence this other female employee was transferred for a discriminatory motive. Plaintiff testified she neither knew "much about the teller position" nor about HSBC's staffing needs for the position. Makida John-Baptiste Dep. Tr. at 29:10–30:2, ECF No. 40-9. She did not know who made the decision to transfer this employee, did not speak with management about the transfer, and was unaware whether this employee filed a discrimination claim. *Id.* at 27:21–28:10, 31:13–17. Plaintiff cannot survive summary judgment by "proffer[ing] only conclusory evidence and subjective claims to support her allegation that the circumstances surrounding her termination demonstrate an inference of discriminatory animus."

13

*Geneste v. AGMA, Inc.*, 12-CV-5801, 2014 WL 5475392, at *7 (E.D.N.Y. Oct. 29, 2014) (Kuntz, J.).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS HSBC's motion for summary judgment.

The Clerk of Court is respectfully directed to enter Judgment against Plaintiff and close the case.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 29, 2025
       Brooklyn, New York